**NOT FOR PUBLICATION**

## <u>UNITED STATES DISTRICT COURT</u>
## <u>FOR THE DISTRICT OF NEW JERSEY</u>

_____

:
ROBERT N. WILLIAMS,              :
                                      :
               Plaintiff,       :
                                        :               Civil Action No. 07-3234 (SRC)
                                        :
               v.                   :               **<u>OPINION</u>**
                                        :
COMMISSIONER OF SOCIAL     :
SECURITY ADMINISTRATION,   :
                                        :
               Defendant.     :
                                        :
_____:

**<u>CHESLER, U.S.D.J.</u>**

## <u>INTRODUCTION</u>

Plaintiff Robert N. Williams, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g),[1] seeks review

of the decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his application for Disability Income Benefits ("DIB") and Supplemental Security

Income ("SSI") benefits.  Plaintiff argues that the decision is not supported by substantial

evidence and should be reversed.  For the reasons set forth in this Opinion, this Court vacates and

remands the Commissioner's decision for further proceedings in accordance with this decision.

_____

[1] These sections of the Social Security Act (hereinafter "Act") provides that any individual may obtain a
review of any final decision of the Secretary of Health and Human Services ("Secretary") made subsequent to a
hearing to which he or she was a party.  The federal district court for the district in which the plaintiff resides is the
appropriate place to bring such action. 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On October 20, 2003, Plaintiff filed an application for DIB and SSI benefits pursuant to Sections 216(i), 223, and 1614(a)(3)(A) of the Social Security Act, codified as 42 U.S.C. §§ 416(i), 423, 1382c(a)(3)(A), respectively.[2]  (Tr. 46.)  Plaintiff's claim is based on his alleged disabilities of pain and weakness in his left leg and depression, as independent impairments or, in the alternative, in the aggregate.  Following the Social Security Administration's denial of Plaintiff's application, Plaintiff filed a request for reconsideration.  (Tr. 42-45.)  Plaintiff filed for a hearing on October 15, 2004 and appeared before Administrative Law Judge Joel Friedman ("ALJ Friedman") on March 13, 2006.  (Tr. 211.)  ALJ Friedman issued a decision on July 28, 2006, finding that the Plaintiff was not eligible for DIB or SSI benefits based upon his disabilities.  (TR. 28.)  The following is a summary of his findings:

1.  The claimant met the special insured status requirements for the Act on August 2, 2002, the date the claimant alleges he became unable to work and continues to meet them through December 31, 2004, but not thereafter.

2.  The claimant has not been engaged in substantial gainful activity since August 2, 2002.

3.  The medical evidence establishes that the claimant has "severe" musculoskeletal and mental impairments, but does not establish medical findings which "meet" or "equal" in severity the clinical criteria of any impairments listed in the Listing of Impairments, Appendix 1, subpart P, Regulations No. 4.

4.  The claimant's subjective complaints and statements of record are not credible, not consistent with the evidence and not supported by the evidence of record.

---

[2] The Act instructs the Secretary to file, as part of his or her answer, a certified copy of the transcript of the record, including any evidence used to formulate his or her conclusion or decision. 42 U.S.C. § 405(g). "Tr." refers to said transcript.

5.      The claimant retains the residual physical functional capacity for a narrow range of light work requiring only two hours of standing and walking in an eight hour day and sedentary work activity with non-exertional limitations including the inability to perform more than simple, routine low stress jobs requiring low contact with other people.

6.      The claimant does not have the residual functional capacity to perform his past relevant work.

7.      The claimant is presently 49 years old, which is defined as a "younger person," he has completed 6 years of schooling (a "limited/marginal" education) and he has had semi-skilled past relevant work experience.

8.      Based upon the claimant's residual physical functional capacity for sedentary work activity, with non-exertional limitations, the testimony of the vocational expert witness, as well as the vocational factors of his age, education and past work experience, the "framework" of Rule 201.20, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, used as a guide for decision-making, directs a conclusion of "not disabled."

9.      The claimant has not been under a "disability" as defined in the Social Security Act, as amended, since August 2, 2002.

(Tr. 28.)  Based on these findings, ALJ Friedman concluded that Plaintiff was not eligible for

DIB or SSI benefits under §§ 216(i), 223, 1602 and 1614(a)(3)(A) of the Act.  (Tr. 28.)  On

March 22, 2007, the Appeals Council granted review.  (Tr. 8.)  The Appeals Council adopted

findings 1 through 7 of the ALJ and revised Findings 8 and 9 as follows:

8.      Based on the claimant's age, education and work experience, if the claimant had the capacity to perform the full range of the sedentary exertional level, 20 CFR 404.1569 and 416.969 and Rule 201.19 in Table No.1 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of not disabled before June 12, 2006. Although the claimant's exertional and nonexertional limitations do not allow him to perform the full range of the sedentary exertional level, using the above-cited Rule as a framework for decision-making, there are a significant number of jobs in the national economy which he could perform; [sic] bench worker, document prep worker, sorter and prep worker, assembly.

        As of June 12, 2006, based on a change in age category, Rule 201.10 directs a finding that the claimant is disabled (20 CFR 404.1520(f) and 416.920(f)).

3

9.      The claimant has been disabled as defined in the Social Security Act since June 12, 2006, but not before that date.  The claimant's alcohol addiction is not a contributing factor material to the finding of disability.

Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), Plaintiff filed the instant action, seeking reversal of the Commissioner's decision.

## STATEMENT OF THE FACTS

### A.      Background

Plaintiff, Robert Norman Williams, was born on June 13, 1956 and stopped working on August 2, 2002, because of his claimed disabilities.  (Tr. 69.)  He testified that he completed school up to the sixth grade and is able to read and write in English.  (Tr. 216.)  From the age of 13 or 14 years old, Plaintiff worked in construction.  (Id.)  Plaintiff testified that he also worked as a tractor-trailer mechanic for 30 years.  (Tr. 217.)  Plaintiff's prior work as a tractor-trailer mechanic involved the use of a variety of machines, lifting up to 100 pounds, and was considered heavy and semiskilled work. (Tr. 233.)

### B.      Claimed Disabilities

Plaintiff stopped working in August 2002, allegedly because of an accident which resulted in a leg injury.  (Tr. 218.)  He testified that he has not had any part-time work since his accident in August 2002, and that he has difficulty standing for more than 15 minutes because of pain and swelling in his ankle.  (Tr. 227.)  Plaintiff further testified that he can walk occasionally without his cane, walk approximately two blocks, carry one bag of groceries, walk upstairs and can lift about 50 pounds.  (Tr. 216, 226-228)  Plaintiff testified that he gets "impatient, antsy, [and] frustrated" when sitting for a period of time.  (Tr. 227.)

4

Finally, Plaintiff reported a history of mental health evaluations and treatment, drug and alcohol use and treatment, and a criminal history.  (Tr. 229-231.)

**C.**      **Medical Evidence Considered by the ALJ**

The record indicates that the Plaintiff has been evaluated by physicians on several occasions.

1.      Mount Carmel Guild's Examination

On November 18, 2002, Plaintiff was seen for a psychiatric evaluation by Dr. Rohit Khanna at Mt. Carmel Guild in Jersey City through a referral by his probation officer.  (Tr. 134-137.)  Dr. Khanna's report lists these diagnoses: Axis I: Intermittent Explosive Disorder, Alcohol Dependence, and Cocaine Dependence in Full Sustained Remission; Axis II: Deferred; Axis III: Hepatitis C Positive, Chronic Bronchitis, and Broken Left Leg in August of 2002; Axis IV: Legal Issues, Occupational Problems, and Medical Issues; Axis V: Current Global Assessment of Function 50, and Highest Global Assessment of Functioning in Past Year: Unknown.  (Tr. 136.)  Dr. Khanna recommended no psychotropic medication and no follow-up with a psychiatrist due to Plaintiff's active alcohol use.  (Id.)  Dr. Khanna further recommended that Plaintiff be referred to inpatient treatment if his alcohol use continued and that he be referred to counseling for substance abuse and anger management if he is unable to maintain sobriety.

2.      Dr. Edward Gray's Examination

On February 6, 2004, Plaintiff was examined by Dr. Edward Gray, an employee of the State of New Jersey, Division of Family Development.  (Tr. 154.)  Dr. Gray's report states that Plaintiff was ambulatory, that due to his orthopedic disability, he could "perform little or none of the duties usual of occupation or of self care," and that Plaintiff used a cane.  (Tr. 155.)  Dr. Gray

further indicated that Plaintiff had never been hospitalized for any psychiatric disability. (Tr. 156.)  Finally, Dr. Grey noted that Plaintiff had no history of alcohol or substance abuse.  Id.

    3. <u>Dr. Anthony J. Candela's Examination</u>

Plaintiff was examined by Dr. Anthony J. Candela, a physician for the New Jersey State Department of Labor, Division of Disability Determination Services, on February 23, 2004, for a comprehensive mental status evaluation because of allegations of depression.  (Tr. 161.)  Dr. Candela's report lists these diagnoses: Axis I: Chronic Depression (moderately severe) and Chronic Alcoholism (active, by history); Axis II: Paranoid Personality Disorder, Explosive Personality Disorder, and Low Average Level of Intellectual Functioning; Axis III: Orthopedic Left Leg Problem (by history).  (Tr. 163.)  The doctor also noted that Plaintiff is able to travel independently, was incarcerated for over a ten year period cumulatively, and has completed probation.  (Tr. 161.)  Dr. Candela concluded that Plaintiff was depressed, angry, moody, and petulant, but not suicidal or homicidal at the time of the evaluation.  (Tr. 162.)  The doctor further noted that Plaintiff had good abstract abilities and good concentration, but his insight, judgment, and reasoning are limited.  (Tr. 163.)

4.     <u>Dr. Champa Bid's Examination</u>

One day later, on February 24, 2004, Plaintiff was examined by Dr. Champa Bid at the New Jersey Department of Labor, Division of Disability Determination Services in Newark, New Jersey.  (Tr. 164.)  Dr. Bid reports that Plaintiff complained of "constant pain in the left mid-foot, ankle and shin areas, and any walking exacerbates this pain," due to fractures sustained by Plaintiff in an accident in 2002.  (Id.)  Plaintiff reported to the doctor that he is able to walk two or three blocks, was taking OxyContin at the time of the evaluation for pain, and that he was not

using a cane.  (Id.)  Dr. Bid notes that Plaintiff is well-developed and well-nourished, ambulatory without the use of a cane, and does have an antalgic gait.  (Tr. 165.)  The doctor additionally noted that Plaintiff had strength in all four extremities but limited range in motion of the left ankle.  Id.

     5.    State Agency Doctors' Review of Plaintiff's Medical Records

On March 17, 2004, Dr. Joseph J. Aaron, a state agency medical doctor, reviewed Plaintiff's records and concluded that Plaintiff's injury to his left leg resulted in physical limitations of lifting up to 50 pounds occasionally, lifting up to 25 pounds frequently, and sitting for about 6 to 8 hours a day with normal breaks.  (Tr. 172.)  Dr. Aaron further concluded that Plaintiff was able to walk two or three blocks, had occasional postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations.  (Tr. 172-175.)

On March 18, 2004, Dr. Benito Tan reviewed Plaintiff's psychiatric records and determined that Plaintiff had a thirty year drinking history, previously served prison terms for armed robbery and attempted murder, and was treated for depression while in prison but has not had any psychiatric treatment since 1982.  (Tr. 182.)  The doctor found that Plaintiff had no psychosis and an adequate mental grasp.  (Id.)  Finally, Dr. Tan reported that Plaintiff can understand and execute instructions and can interact appropriately in low contact work settings.  (Id.)

**DISCUSSION**

**A.**    **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C.

7

§ 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  The reviewing court must consider the totality of evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984).  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age."  Blalock v. Richardson,

8

483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that supports a

contrary conclusion does not undermine the Commissioner's decision so long as the record

provides substantial support for that decision."  Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx.

954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

**B.       Standard for Awarding Benefits Under the Act**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. §

423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and

aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if

he is unable to "engage in substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A);

see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).  Disability is predicated on whether

a claimant's impairment is so severe that he "is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Finally, while subjective complaints of pain are considered, alone, they are not enough to establish

disability.  42 U.S.C. § 423(d)(5)(A).  To demonstrate that a disability exists, a claimant must

present evidence that his or her affliction "results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically accepted clinical and laboratory

diagnostic techniques."  42 U.S.C. § 423(d)(3).

C.      **The Five-Step Evaluation Process**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[3]  20 C.F.R. § 404.1520(b).  If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Yuckert, 482 U.S. at 141. At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment.  20 C.F.R. §§ 404.1520(a)(ii), (c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.  In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2

---

[3] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

(3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify

which listings apply and give reasons why those listings are not met or equaled.  In Jones v.

Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does

not require the ALJ to use particular language or adhere to a particular format in conducting his

analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the

record and explanation of findings to permit meaningful review."  (Id.)  An ALJ satisfies this

standard by "clearly evaluating the available medical evidence in the record and then setting forth

that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant

listing."  Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional

capacity to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to

perform his past relevant work, he will not be found disabled under the Act.  In Burnett, the Third

Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional
> capacity enables her to perform her past relevant work. This step involves three
> substeps: (1) the ALJ must make specific findings of fact as to the claimant's
> residual functional capacity; (2) the ALJ must make findings of the physical and
> mental demands of the claimant's past relevant work; and (3) the ALJ must
> compare the residual functional capacity to the past relevant work to determine
> whether claimant has the level of capability needed to perform the past relevant
> work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is

deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

demonstrate that there are other jobs existing in significant numbers in the national economy

which the claimant can perform, consistent with his medical impairments, age, education, past

11

work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If

the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be

found disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the

Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the

burden of establishing the existence of jobs in the national economy.  These guidelines dictate a

result of "disabled" or "not disabled" according to combinations of factors (age, education level,

work history, and residual functional capacity).  These guidelines reflect the administrative notice

taken of the numbers of jobs in the national economy that exist for different combinations of these

factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, Paragraph 200.00(b).  When a claimant's

vocational factors, as determined in the preceding steps of the evaluation, coincide with a

combination listed in Appendix 2, the guideline directs a conclusion as to whether an individual is

disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458 (1983).  The claimant may

rebut any finding of fact as to a vocational factor.  20 C.F.R. Part 404, Subpart P, Appendix 2,

Paragraph 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, in the five-step

process, "must analyze the cumulative effect of the claimant's impairments in determining

whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422,

428 (3d Cir. 1999).  Moreover, "the combined impact of the impairments will be considered

throughout the disability determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523.

However, the burden still remains on the Plaintiff to prove that the impairments in combination

are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 Fed. Appx. 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability).

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as their interpretation in Jones, to every step of the decision.  See, e.g., Rivera v. Commissioner, 164 Fed. Appx. 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format."  Id.

**D.    ALJ Friedman's Findings**

ALJ Friedman applied the five-step sequential evaluation and determined that the Plaintiff was not disabled within the meaning of the Act.  (Tr. 27.)

**1**.    **Step One**

ALJ Friedman found that Plaintiff satisfied the first step of the evaluation process, given that Plaintiff has not engaged in substantial gainful activity since the onset of his alleged disability in August 2002.  (Tr. 22.)

**2.    Step Two**

In step two of the evaluation, ALJ Friedman found that Plaintiff has "severe" medical impairments involving musculoskeletal and mental restrictions. (Tr. 22-23.)

**3.    Step Three**

In step three, ALJ Friedman found Plaintiff's physical and mental impairments "considered either singly or in combination, are not accompanied by the abnormal clinical

13

findings, diagnostic test results, mental functional limitations and secondary complications required by the Listing of Impairments (Exhibits 1F-10F)." (Tr. 23.) ALJ Friedman found that Plaintiff's physical impairment did not meet the level of severity of the Listings. In evaluating Plaintiff's mental impairment, ALJ Friedman found these impairments "not evidenced by a 'marked' or 'repeated' degree of functional limitations in the areas of activities of daily living, social functioning, maintaining attention or episodes of decomposition under the 'B' criteria." Id. The ALJ similarly found that none of the mental impairments showed evidence of "an inability to function outside of a highly supportive living arrangement" as required to meet the "C" Listing criteria. Id. ALJ Friedman concluded that the Plaintiff's impairments did not rise to the level of severity of the Listings because Plaintiff failed to demonstrate that his mental or physical impairment satisfied requirements of Sections 1.00 et. seq. or 12.00 et. seq. Id.

### 4. Step Four

At the fourth step, ALJ Friedman determined that Plaintiff had the residual physical functional capacity to perform sedentary work activity, which could involve lifting no more than 10 pounds at a time and standing or walking two hours or less a day. (Tr. 25.) This finding was based on Dr. Bid's diagnosis that Plaintiff is ambulatory without the use of a cane, Dr. Grey's evaluation to the same effect, the New Jersey State Division of Disability Determination Services' conclusion that Plaintiff could carry and lift up to 50 pounds occasionally and 25 pounds frequently and that Plaintiff could sit for six hours and stand or walk for up to two hours. (Tr. 24.)

In assessing Plaintiff's residual mental functional capacity, ALJ Friedman found that Plaintiff is "limited to sedentary work activity with non-exertional limitations including the inability to perform more than low contact, simple jobs." (Tr. 26.) The ALJ based this finding on

14

Plaintiff's mental health records and testimony.  (Tr. 25-26.)  ALJ Friedman stated that Plaintiff "has 'moderate' difficulties in maintaining social functioning based on his paranoia, social phobia, explosive personality disorder traits and difficulty relating to other people."  (Tr. 26.)

Plaintiff's past relevant skilled work as a tractor-trailer mechanic involved heavy-level exertional work.  ALJ Friedman found that, due to Plaintiff's exertional limitations, Plaintiff lacks the residual functional capacity to return to his past relevant work.  (Id.)

### 5. Step Five

In the fifth and final step, ALJ Friedman found, based on the testimony of the Vocational Expert witness Mr. Rocco Meola, that there are a significant number of jobs in the national and local economy that Plaintiff could perform and therefore is "not disabled."  (Tr. 27.)  This finding was based on a hypothetical question posited to Mr. Meola which assumed Plaintiff's "residual physical functioning capacity to perform sedentary work activity, the non-exertional limitations, his age, education and prior relevant work experience and the jobs enumerated by the Vocational Expert witness."  Id.  The hypothetical question was as follows:

> Assume for a moment an individual of the claimant's age.  He is currently, I think, 49 years old.  His education, which is limited, marginal to limited, his past relevant work experience.  Assume for the purpose of the hypothetical that I found him capable of performing the exertional demands as follows.  Assuming for the moment that he could lift 20 pounds occasionally, ten pounds frequently. [...]  He could stand and walk two hours in an eight-hour day. Could occasionally do all postural activities, but he is limited to simple, routine and low stress and low contact work.  Obviously, that's going to rule out his past relevant work because of the weights and standing.  Would there be other jobs that such a person could perform that exists in the national and regional economies?  (Tr. 234-235.)

### E. Analysis

Plaintiff contends that ALJ Friedman's decision should be reversed and Plaintiff should be awarded all DIB and SSI benefits because the ALJ's decision was not supported by substantial

evidence.  (Pl. Brf. 2.)  Plaintiff's arguments may be summarized as follows: 1) ALJ Friedman did not incorporate all of the restrictions evidenced in the record in his hypothetical question posed to the Vocational Expert; 2) Plaintiff should be awarded benefits for the six months prior to his fiftieth birthday.

     1.     **Did the ALJ Err in his hypothetical question to the Vocational Expert?**

The Third Circuit has held, where evidence in the record was "medically undisputed," the ALJ must include those impairments in the hypothetical question.  <u>Podedworny v. Harris</u> 745 F.2d 210, 218 (3rd Cir. 1984).  In <u>Rutherford v. Barnhart</u>, 399 F.3d 546 (3rd Cir. 2005), the Court elaborated on <u>Podedworny</u> to establish guidelines for hypothetical questions to Vocational Experts.

> [T]he directive in <u>Podedworny</u> is that the hypotheticals posed must "accurately portray" the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments "as contained in the record."  [...]  Fairly understood, such references to *all* impairments encompass only those that are medically established. And that in turn means that the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*.

<u>Id</u>. at 553.  Under <u>Podedworny</u>, the ALJ must "accurately portray the claimant's impairments."
<u>Id</u>.

The Third Circuit also dealt with a hypothetical question in a case factually similar to the case at bar in <u>Ramirez v. Barnhart</u>, 372 F.3d 546 (3d. Cir. 2004).  In <u>Ramirez</u>, plaintiff suffered from an anxiety disorder.  The ALJ filled out the psychiatric review technique form (PRTF), required at steps two and three of the process, on which she stated that the plaintiff often suffered from deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner.  However, the hypothetical question the ALJ asked the Vocational Expert did not

include the PRTF limitations found by the ALJ.  The only limitations included in the hypothetical

question relating to the plaintiff's mental limitations were restrictions to simple tasks, travel

restrictions, and telephone privileges.  The Third Circuit held that the hypothetical question failed

to account for plaintiff's deficiencies in pace as found by the ALJ and that this omission could

have affected the vocational expert's opinion about availability of jobs in the economy that

plaintiff could perform.  Thus, the Court found the ALJ's decision was not supported by

substantial evidence and remanded the case to the Commissioner for further proceedings.

   In the instant case, the psychological limitations were found to be "moderate" at step four

by the ALJ because of Plaintiff's  "paranoia, social phobia, explosive personality disorder and

difficulty relating to other people."  (Tr. 26.)   Since these findings were made by ALJ Friedman

himself at step four, they are not  "medically disputed" and must have been credibly established.

Rutherford requires that the ALJ must convey to the Vocational Expert all of the credibly

established limitations.  Rutherford, 399 F.3d at 553.  Yet these findings were not included in the

hypothetical question posed to the Vocational Expert by ALJ Friedman.  Under the rule of

Podedworny and Rutherford, all credibly established limitations must be included in the

hypothetical question in order for the expert response to qualify as substantial evidence supporting

the ALJ's disability determination.  At step four, ALJ Friedman determined that the RFC included

"moderate difficulties in maintaining social functioning based on his paranoia, social phobia,

explosive personality disorder traits and difficulty relating to other people."  (Tr. 26.)  These

limitations were not, however, included in the hypothetical question.

   The Commissioner contends that all of Plaintiff's mental limitations were accounted for

by the caveat in the hypothetical question that the jobs in the national and local economy be

routine, low stress and low contact.  This argument is nearly identical to the argument rejected by the Court in <u>Ramirez</u>: the Court found that the ALJ's hypothetical question, which included limitations in travel and simple tasks, did not properly account for the deficiencies in pace found by the ALJ.  <u>Ramirez</u>, 372 F.3d at 555.  Similarly, here, the limitation to simple, routine and low contact work in the hypothetical does not adequately convey the "moderate difficulties in maintaining social functioning" due to mental limitations of paranoia, social phobia and explosive personality disorder.  Just as in <u>Ramirez</u>, the answer to the hypothetical question might have been very different had all of the restrictions found by the ALJ been included in the hypothetical question.

The Plaintiff's assertion that the ALJ erred in his construction of the hypothetical question posed to the Vocational Expert, Mr. Rocco, has merit.  The hypothetical question did not include all of Plaintiff's credibly established mental limitations, as determined by ALJ Friedman at step four.  Because the ALJ erred in constructing the hypothetical, the Vocational Expert's answer does not constitute substantial evidence to support the ALJ's step five determination.

2.      <u>Did the ALJ err by not finding Plaintiff disabled as of six months prior to his fiftieth birthday?</u>

Initially, Plaintiff was found not disabled by the ALJ.  However, since his age had changed from forty-nine at the time of the hearing to fifty at the time the decision was rendered, Plaintiff raised the change in age category to the Appeals Council.  The Appeals Council modified the ALJ's decision to reflect a finding that Plaintiff was disabled as of the day before Plaintiff's fiftieth birthday.  On Appeal, Plaintiff asks for the Appeals Council's determination to be further

modified to find Plaintiff disabled for the six months prior to his fiftieth birthday based on an interpretation of case law dealing with "borderline" age categories cases discussed below.

In support of Plaintiff's argument for back-pay before his change in age, Plaintiff states "[t]he Commissioner must not apply the age categories of the guidelines in a mechanical fashion, especially in a "borderline situation."  (Pl.'s Brf. 19.)  This assertion is based on the regulations, 20 C.F.R §404.1563(b), which state that if a claimant is "within a few days to a few months of reaching an older category, and using the older category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of the factors of your case."  Here, the Appeals Council did consider using the older age category and did in fact adjust the determination to disabled as of the day before Plaintiff's fiftieth birthday.

Plaintiff does not persuade this Court that the regulation require a further adjustment. Plaintiff does not show that the law provides for a mandatory six month allowance of disability before Plaintiff is eligible for disability.  For support, Plaintiff cites <u>Forte v. Astrue</u>, No. 06 Civ. 2214 (D.N.J. June 27, 2007), in which the court considered a "borderline situation" where the sole factor preventing a determination of disability was plaintiff's age.  In that case, plaintiff was six months shy of the necessary age for a finding of disability and the case was remanded to determine "whether plaintiff did indeed present a borderline situation" that would justify granting the older age category six months prior to plaintiff's actual birthday.  <u>Id</u>.  That case is distinguishable from the instant case in that here the Appeals Council did in fact consider the Plaintiff's age situation and modified ALJ Friedman's decision accordingly.

19

Plaintiff does not establish a legal basis to support an enlargement of the period of disability beyond the extension granted by the Appeals Council. Plaintiff fails to establish a legal basis to stretch further, beyond the bounds of the guidelines, to bump people into an age category before they have actually reached the necessary age.

## <u>CONCLUSION</u>

For the reasons stated above, this Court finds that the Commissioner's decision was not supported by substantial evidence. The decision is vacated and remanded for further proceedings in accordance with this opinion.

Dated: November 25, 2008

    s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.
